# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**KATIE WAGNER,**

              Plaintiff,

              -vs-

**Case No. 08-C-299**

**WISCONSIN AUTO TITLE LOANS, Inc.,**

              Defendant.

## DECISION AND ORDER

Katie Wagner brought a seven-count complaint in Milwaukee County Circuit Court. Wagner's complaint relates to an auto title loan she obtained from Wisconsin Auto Title Loans, Inc. ("WATL"). WATL removed the matter on April 10, alleging that the first claim in Wagner's complaint (Violation of Wisconsin Consumer Act, "WCA," Wis. Stat. chs. 421-427) both directly and indirectly implicates the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"). Wagner now moves for remand to state court. For the reasons that follow, Wagner's motion is granted.[1]

## BACKGROUND

Wagner is a 28 year old student and single mother of a young child. Wagner was in need of money but she was unable to obtain a conventional loan. On or about August 14, 2006, Wagner used her only significant asset, her car, as collateral to obtain an $800 auto

---

[1] Also pending is WATL's motion to compel arbitration. In light of the Court's remand, the Court will not reach the merits of this motion.

title loan from WATL in Milwaukee. The loan agreement included the $800.00 loan Wagner requested, plus a $120.00 charge for a monthly membership in the "Continental Car Club" (CCC) for a total of $920.00 disclosed as the "amount financed." The APR was disclosed as 300%, and the finance charge was disclosed as $234.41. The loan agreement required repayment of $1154.41 in 30 days by September 14, 2006.

When Wagner applied for the loan she did not request any additional products such as the CCC membership and there was no discussion of the CCC until after the WATL representative prepared the loan documents and presented them for Wagner's signature prior to giving her the loan proceeds. When Wagner noticed that the additional charge for the CCC was added to her contract, she asked what it was and why she had to take it. She was told that she had to purchase the CCC membership or she would not get the loan. She was also told that the purpose of the CCC was to protect WATL's interest in Wagner's car as collateral.

Wagner's complaint alleges seven claims, all of them under Wisconsin law. The first claim alleges a violation of the WCA, §§ 422.202(2s)(a)3, 422.202(3) and 422.301, for failing to disclose the costs of a roadside assistance service (CCC) for required purchase in connection with a consumer loan.

Wis. Stat. § 422.202(2s)(a)3 provides, in pertinent part:

> A creditor may contract for and collect from the borrower, *or include in the amount financed*, any of the following:
> ...
>
> 3. Charges or fees for future services contracts or motor club service contracts *if all of the following conditions are met*:

-2-

> a. *Membership is not required as a condition of the extension of credit.*
>
> .... (emphasis added).

Therefore, because Wagner alleges that membership in the CCC was a requirement to obtain the loan, the fee could not be included as part of the "amount financed" pursuant to § 422.202(2s)(a)3. Rather, it is "considered part of the finance charge. An additional charge authorized by this section but assessed in a manner inconsistent with this section is not part of the finance charge *unless . . . the creditor requires the charge as an incident to or condition of the extension of credit.*" Wis. Stat. § 422.202(3)(a) (emphasis added).

As a result of the failure to include the CCC membership fee as a finance charge, Wagner alleges that the stated APR (300%) was substantially below the correct APR. This is because the 300% APR was based on a $234.41 finance charge in relation to $920.00 financed over 30 days, rather than a $354.41 finance charge in relation to $800.00 as the correctly financed amount.[2] This would be an apparent violation of Wis. Stat. § 422.301 (Requirements of federal act): "In addition to the disclosures required by the federal consumer credit protection act [i.e., the TILA], if any, the creditor shall disclose to the customer to whom credit is extended the information required by this subchapter..."

## ANALYSIS

An action can be removed if the federal courts have "original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States." 28

---

[2] In relation to an $800.00 loan, the APR would have been approximately 531%.

-3-

U.S.C. § 1441(b). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under the well-pleaded complaint rule, the plaintiff is "the master of the claim" and may thus "avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392.

Where state law creates the plaintiff's cause of action, there is no federal question jurisdiction unless "some substantial, disputed question of federal law is a necessary element . . . of the well-pleaded state claim" or the "claim is 'really' one of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13 (1987). Stated another way, a state law cause of action is removable only where it "raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturing*, 545 U.S. 308, 312 (2005).

To summarize the basic elements of Wagner's first claim, Wagner alleges that the required purchase of the $120 fee for membership violates §§ 422.202(2s)(a)3, 422.202(3), Wis. Stats., because it was characterized as part of the loan's principal (the amount financed). In other words, WATL made it seem like they were charging Wagner $234 to borrow $920, as opposed to $354 to borrow $800. As a corollary, the improper inclusion of the $120 fee in the amount financed means that the APR as disclosed in the loan documents was

-4-

necessarily incorrect.  This result, which naturally flows from the improper inclusion of the $120 fee for membership, violates § 422.301, Wis. Stats., which apparently incorporates by reference the disclosure requirements of the federal TILA.

WATL argues that the gravamen of Wagner's claim is the failure to make the proper disclosures under TILA.  Wagner's claim is not about improper disclosure, at least as that term is used and understood pursuant to TILA.  The main thrust of Wagner's claim is the required purchase of the CCC auto club membership as part of the amount financed – a violation of state law.  Wagner, who is properly considered the master of her own complaint, did not directly allege any violation of TILA.  The only way TILA is implicated by this lawsuit is if its disclosure requirements are incorporated by § 422.301, Wis. Stats.

Ultimately, if the allegations of Wagner's complaint are true (*i.e.*, if CCC membership was required as a condition to receive the loan), a violation of TILA's disclosure requirements (by virtue of § 422.301) would be undisputed.  *See, e.g.,* 15 U.S.C. § 1638(a)(4); *Andrews v. Chevy Chase Bank, FSB*, 240 F.R.D. 612, 618-19 (E.D. Wis. 2007) (finding a violation of TILA where the defendant's disclosure of the cost of the loan as an annual percentage rate was unclear).  On the other hand, if the allegations of Wagner's complaint are not true, it would similarly be undisputed that there was no TILA violation.  Either way, the federal issue is not disputed and substantial such that this Court should exercise jurisdiction over Wagner's complaint.

Even if there was a disputed and substantial federal question, "the exercise of federal jurisdiction is subject to a possible veto.  For the federal issue will ultimately qualify for a

federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of [28 U.S.C.] § 1331." *Grable* at 313-14. In *Grable*, the Supreme Court found in favor of "arising under" jurisdiction in the context of a state quiet title action which rested on the meaning of a federal tax provision. Jurisdiction was proper, in part, because "it is the rare state quiet title action that involves contested issues of federal law. . . . Consequently, jurisdiction over actions like Grable's would not materially affect, or threaten to affect, the normal currents of litigation." *Id.* at 319.

TILA does not preempt state-law claims that implicate TILA's disclosure requirements. *See* 15 U.S.C. § 1610; *Alexiou v. Brad Benson Mitsubishi*, 127 F. Supp. 2d 557, 560 (D.N.J. 2000). In this context, it is apparent that Congress "did not deem it important for federal courts to decide all cases that might raise TILA issues." *See Evans v. Courtesy Chevrolet II, LP*, 423 F. Supp. 2d 669, 672 (S.D. Tex. 2006). Aside from Wisconsin, there are numerous states with statutes that incorporate TILA's disclosure requirements by reference. *See, e.g., Clemons v. Home Savers, LLC*, 530 F. Supp. 2d 803, 810 (E.D. Va. 2008) (Virginia's Mortgage Lender and Broker Act, Va. Code Ann. § 6.1-408 et seq., incorporates the disclosure requirements contained in the TILA, Va. Code Ann. § 6.1-422(A)(6)).[3] To find in favor of jurisdiction would present the risk of attracting "a horde of original filings and removal cases raising other state claims with embedded federal issues."

---

[3] *See also Pierce v. NovaStar Mortg., Inc.*, 422 F. Supp. 2d 1230, 1234 (W.D. Wash. 2006) (Washington law incorporates TILA disclosure requirements); *In re Boganski*, 322 B.R. 422, 428 (9th Cir. BAP 2005) (noting that Nevada and Indiana state law incorporate by reference TILA disclosure requirements); *Ritter v. Durand Chevrolet, Inc.*, 932 F. Supp. 32, 34 (D. Mass. 1996) (Massachusetts law incorporates TILA standards).

-6-

*Grable* at 318. Accordingly, the instant case is also subject to the "possible veto" discussed in *Grable*. *See Evans* at 672 (even if state law claims necessarily involved disputes as to TILA requirements, allowing federal jurisdiction in cases arising out of disclosures in installment contracts for purchasing cars would disturb the congressionally approved balance of federal and state judicial responsibilities).

Finally, 28 U.S.C. § 1447(c) allows the Court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Attorney fees may be awarded under § 1447(c) only when the removing party "lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). In light of the possible issue under TILA, WATL's removal was objectively reasonable.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Wagner's motion for remand [D. 7] is **GRANTED**, but her request for fees and costs [D. 7] is **DENIED**; and

2. This matter is **REMANDED** to Milwaukee County Circuit Court.

Dated at Milwaukee, Wisconsin, this 15th day of September, 2008.

                                       **SO ORDERED,**

                                       *s/ Rudolph T. Randa*
                                       **HON. RUDOLPH T. RANDA**
                                       **Chief Judge**